## PERRIN *v.* LYMAN'S ADMISTRATOR.

PRINCIPAL AND AGENT.—*Personal Liability.*—*Agent of Government.*—Ordinarily, an agent contracting in behalf of the government, or of the public, is not personally bound by the contract.

SAME.—*Quartermaster.*—A quartermaster in the army of the United States during the late rebellion employed a person as a clerk, put his name on the government pay-rolls, with the names of the other clerks of his department, and paid him $75 monthly out of the funds of the United States, said clerk signing the usual vouchers. He worked for the government, and performed no service whatever for the quartermaster individually. Their agreement was, that said clerk should have $75 for the first.month, and $125 per month thereafter.

*Held,* that the quartermaster was not personally liable to such clerk.

INTEREST.—*Usury.*—*Remedy.*—The law in force at the time the remedy is sought upon a contract governs as to questions of usury.

SAME.—*Statute Construed.*—The provision of the interest law of 1867 (Acts 1867, p. 151), that "all interest exceeding the rate of ten per centum per annum.shall be deemed usurious and illegal, as to the excess only, and in any action upon a contract affected by such usury, such excess may be recouped by the defendant, whenever it has been reserved or paid before the bringing of the suit," embraces contracts made before, as well as those made after, the passage of said act.

APPEAL from the Marion Common Pleas.

GREGORY, J.—Suit by the appellee against the appellant, on the following promissory note: "Indianapolis, June 20th, 1862. One day after date, I promise to pay to Charles W. Lyman or order, six hundred dollars, with interest at ten per cent., value received, without any relief whatever from valuation or appraisement laws." (Signed) "GEO. K. PERRIN."

The defendant, among other things, set up as a defense in his answer, an account against the plaintiff's intestate in favor of one Redfield, for services rendered by the latter in the quartermaster's department, from July 22d, 1862, to February 24th, 1863, assigned by Redfield to the defendant before suit was commenced.

The evidence tended to show that Lyman was a quartermaster in the army of the United States, during the late rebellion; that as such he employed Redfield as a clerk, put

his name on the government "pay-roll," with the other clerks of his department, and paid him monthly, out of the funds of the United States, the sum of seventy-five dollars; that Redfield signed the usual vouchers; that Redfield worked for the government, and performed no services whatever for Lyman individually, during the time he served as such clerk. There was proof tending to show that the agreement was, that Redfield was to have seventy-five dollars for the first month, and one hundred and twenty-five dollars per month thereafter.

The jury found for the plaintiff the amount due on the note, computing interest at ten per cent., and disallowing Redfield's account.

The court instructed the jury, that "if the United States was at all liable to Redfield, the assignor of the account pleaded as a set-off in this action, for the services performed by Redfield as clerk in the quartermaster's department, said services being all performed for the United States, and at the time he entered upon the employment, Redfield agreed to enter into the employ of the United States and receive his pay from the same, then the estate of Charles W. Lyman, the plaintiff in this action, is not liable to the defendant, who is the assignee of Redfield, and the claim for said services is not a proper set-off to the note sued on, unless the agreement by Lyman, the decedent, with Redfield, to pay for said services was in writing."

The court also instructed the jury, that the plaintiff was, under the law, entitled to the rate of interest contracted for in the note.

Lyman was at the time a public agent; this fact was known to Redfield; there was no attempt to bind Lyman individually for these services. Redfield recognized the government as his paymaster. If he was entitled to more than he received, certainly, under the circumstances, Lyman was not personally liable to him therefor.

There is a distinction between public agents and those of

a private character, in respect of their personal liability. Ordinarily, an agent contracting in behalf of the government, or of the public, is not personally bound by such contract, because it is not to be presumed, either that a public agent intends to bind himself personally, or that a party contracting with him in his public character means to rely upon his individual responsibility. See *Hodgson* v. *Dexter*, 1 Cranch, 345; *Nichols* v. *Moody*, 22 Barb. 611; *Belknap* v. *Rinehart*, 2 Wend. 375.

It is claimed that the instruction was calculated to mislead the jury. We do not think so. Under the proof, there was no ground for claiming that Lyman was individually liable to Redfield, and the court might have so told the jury.

The act of March 9th, 1867, in force when this suit was commenced and tried, provides, that "all interest exceeding the rate of ten per centum per annum shall be deemed usurious and illegal, *as to the excess only*, and in any action upon a contract affected by such usury, such excess may be recouped by the defendant, whenever it has been reserved or paid before the bringing of the suit." Acts 1867, p. 151, sec. 2. This is as broad in its provisions as section twenty-nine, chapter thirty-one, of the Revised Code of 1843, which was held by this court, in *Andrews* v. *Russel*, 7 Blackf. 474, to embrace contracts made before, as well as those made after, its passage.

Indeed, it has been repeatedly held by this court, that the law in force at the time the remedy is sought must govern as to questions of usury.

In *Rathburn* v. *Wheeler*, 29 Ind. 601, it was held, where a note was executed in 1861, on the face of which usurious interest was included, and afterwards payments of usurious interest were made thereon, in 1865 and 1866, and suit was brought on the note after the act of 1867, regulating interest, was passed and went into force, that that act governed.

In *Wood* v. *Kennedy*, 19 Ind. 68, the learned judge delivering the opinion of the court said, "The change made in

the interest law, then, by the act of 1861, is mainly in relieving from penalties, or consequences in the nature of penalties, and is not one impairing the obligation of the terms of the contract, but rather enforcing, or validating them. In such cases the law in force at the time the remedy is sought upon the contract governs."

The court below committed no error in giving the instruction asked by the plaintiff, or in refusing that asked by the defendant, as to the rate of interest recoverable on the note.

The judgment is affirmed, with costs.

*L. Barbour* and *C. P. Jacobs,* for appellant.

*G. H. Chapman* and *J. S. Tarkington,* for appellee.